THE SUNTAG LAW FIRM
A Professional Corporation
DANA A. SUNTAG (California State Bar No. 125127)
LORIS L. BAKKEN (California State Bar No. 215033)
The Kress Building
20 North Sutter Street, Fourth Floor
Stockton, California 95202
Telephone: (209) 943-2004
Facsimile:  (209) 943-0905

Attorneys for Chapter 7 Trustee
ALAN S. FUKUSHIMA

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

In re:

MARTHA MASIEL RAMIREZ,

    Debtor.

Case No.: 11-36557-E-7

DC No.: SLF-10

**CHAPTER 7 TRUSTEE'S MOTION FOR AUTHORIZATION TO SELL REAL PROPERTY FREE AND CLEAR OF INTERESTS**

Date: April 25, 2013
Time:  10:30 a.m.
Place: Department E
The Honorable Ronald H. Sargis

    Chapter 7 Trustee Alan S. Fukushima respectfully moves for authorization to sell two parcels of real property located at 11278 Garden Highway, Yuba City (Sutter County), California 95991 free and clear of interests. One parcel is 10 acres of unimproved land (the "10 Acre Parcel") and the other parcel is nine acres with improvements (the "9 Acre Parcel") (collectively, the "Property").

    The Trustee believes this relief is appropriate and the sale of the Property is in the best interests of the creditors and that this Court should approve it pursuant to Bankruptcy Code Section 363(b).

The Trustee represents the following:

A. <u>Background Facts</u>.

1. On July 5, 2011, the Debtor filed this case under Chapter 13.

2. On March 20, 2012, the Court converted this case to Chapter 7. Mr. Fukushima is the Chapter 7 Trustee.

3. In her schedules, the Debtor disclosed the Property as being held jointly with her husband, Santiago Ramirez. She valued the Property at $200,000.00 and disclosed a secured claim of $37,987.00 held by Karyn Boomgaarden. The Debtor did not claim an exemption in the Property. (Doc. No. 15).

4. The Trustee had Ron G. Nakano, Associate Broker at Coldwell Banker Northern California, review an appraisal of the Property and perform a preliminary analysis of its fair market value. Mr. Nakano valued the Property at $201,000. (Fukushima Decl., ¶ 2; Doc No. 116).

5. On August 12, 2012, this Court entered an order granting the Trustee's application to employ Mr. Nakano to market the Property for sale. (Doc. No. 121).

6. On August 20, 2012, the Trustee learned, through Mr. Nakano, that the Debtor and Mr. Ramirez had listed the Property for sale on November 4, 2011, and that their realtor was actively marketing the Property for sale. Their realtor agreed to cancel the listing. (Fukushima Decl., ¶ 3).

7. On August 22, 2012, the Trustee's counsel prepared a declaration for Santiago Ramirez stating that Mr. Ramirez consented to the Trustee selling the Property. The Trustee's counsel spoke to the Debtor's counsel, Anthony Hughes, who stated that he would contact Mr. Ramirez to obtain his consent to the sale. (Bakken Decl., ¶ 2).

8. On August 29, 2012, the Trustee's counsel received an email from Mr. Hughes' administrative manager, Melody Varela, stating that Mr. Ramirez had been out of town and would be in the office on August 31, 2012, to sign the declaration in support of the sale. (Bakken Decl., ¶ 3, Ex. A).

9. On August 31, 2012, Ryan Hughes, also of Anthony Hughes' office, telephoned Trustee's counsel and stated that he would have the signed release to Trustee's counsel by the end of the day. (Bakken Decl., ¶ 4).

10. On September 4, 2012, the Trustee's counsel sent an email to Ms. Varela inquiring about the status of the declaration in support of the sale. On September 6, 2012, Ms. Varela responded by email that Mr. Ramirez had not made it to the office to sign the declaration; however, she stated that the Debtor would be taking the declaration to Mr. Ramirez to obtain his signature. (Bakken Decl., ¶ 5, Ex. B).

11. On September 11, 2012, law enforcement arrested three men on the Property for suspicion of marijuana cultivation and seized 442 nearly mature marijuana plants growing on the Property.[1]

12. On September 14, 2012, Ms. Varela told Trustee's counsel that Mr. Ramirez was in Mexico and that the Debtor was attempting to obtain his signature. (Bakken Decl., ¶ 6).

13. The Trustee held off on listing the Property for sale while he was waiting for Mr. Ramirez to sign a declaration consenting to the sale of the Property. (Fukushima Decl., ¶ 5).

14. On February 20, 2013, Ms. Boomgaarden filed a motion for relief from automatic stay to foreclose on the Property. She represented that the amount of her lien is at least $170,142.23. She provided with her motion loan documents and other evidence that confirms this representation. In addition, she noted that the Debtor scheduled the Property with a value of $50,000 in another bankruptcy case she had filed that had been dismissed, Case No. 09-48498-E-11 (See Doc. No. 129, p. 3, lines 4-6).

15. On February 28, 2013, the Trustee filed a motion to abandon the Property. (Doc. No. 140).

---

1. Pursuant to Rule 201(b)(2) of the Federal Rules of Evidence, the Trustee respectfully requests the Court to take judicial notice of the arrests and the seizure of the marijuana plants on the Property. (Fukushima Decl., ¶ 4, Ex. C).

MOTION FOR AUTHORIZATION
TO SELL REAL PROPERTY           3

16. On March 7, 2013, the Debtor filed oppositions to the motion to abandon and the motion for relief from automatic stay (the "Oppositions"), arguing the Property has equity for the estate because she had located a buyer, Mundeep Dhami, who made an offer to buy the Property for $195,000 (the "First Offer"). The Debtor attached Mr. Dhami's First Offer and supporting declaration to her Oppositions. (Doc. Nos. 144 and 148).

17. On March 12, 2013, the Trustee filed a stipulation to continue the hearing on the motion to abandon to allow the Trustee time to investigate whether a sale of the Property would generate funds for the estate. Ms. Boomgaarden also filed a stipulation to continue the hearing on her motion for the same purpose. (Doc. Nos. 154 and 153, respectively).

18. Debtor's counsel provided the Trustee's counsel with a preliminary title report (the "PTR") on the Property dated March 13, 2013, that confirmed the Property is still owned by the Debtor and Mr. Ramirez (as joint tenants) and that the Property has the following liens against it:

(i) General and special taxes for the fiscal year 2012-2013, in the amount of $2229.1 (Item 2 on the PTR);

(ii) Real property taxes for the fiscal year 2011-2012, in the amount of $2488.10 (Item 3 on the PTR);

(iii) General and special taxes for the fiscal year 2012-2013, in the amount of 1919.62 (Item 4 on the PTR);

(iv) Real property taxes for the fiscal year 2011-2012, in the amount of $2150.54 (Item 5 on the PTR);

(v) A lien for unsecured property taxes in favor of the tax collector of Sutter County, in the amount of $64.26 (Item 16 on the PTR);

(vi) A lien for unsecured property taxes in favor of the tax collector of Sutter County, in the amount of $44.05 (Item 17 on the PTR);

(vii) A lien for unsecured property taxes in favor of the tax collector of Sutter County, in the amount of $46.68 (Item 18 on the PTR);

1 (collectively, the "Tax Liens." The dollar amounts of the Tax Liens from the PTR total $8753.78);
2 and
3      (viii) The Boomgaarden deed of trust (Item 15 on the PTR) (the
4 "Boomgaarden Lien").
5 (Fukushima Decl., ¶ 6, Ex. D).
6   B. The Proposed Sale.
7   19. On March 27, 2013, the Trustee's counsel contacted Mr. Dhami to discuss
8 his offer to buy the Property. After discussions, the Trustee, through counsel, and Mr. Dhami
9 reached agreement for the estate to sell the Property to him. (Fukushima Decl., ¶ 7; Bakken
10 Decl., ¶ 7).
11   20. Under the terms of the agreement, Mr. Dhami agreed to purchase the
12 Property for $205,000.00 on an "AS IS" basis without warranties (the "Agreement"). (Fukushima
13 Decl., ¶ 8, Ex. E).
14   21. Neither the Trustee nor his professionals have any relationship with
15 Mr. Dhami. (Fukushima Decl., ¶ 9; Bakken Decl., ¶ 8).
16   22. The Trustee believes that, under the terms of the proposed sale to
17 Mr. Dhami, there is equity in the Property and the proposed sale of the Property is the best
18 method of liquidating it for the benefit of the estate. (Fukushima Decl., ¶ 10).
19   23. The Trustee intends to pay the Tax Liens and the Boomgaarden Lien
20 through escrow from the proceeds of the sale. (Fukushima Decl., ¶ 11).
21   24. Between March 12, 2013, and April 3, 2013, the Trustee's counsel and
22 Ms. Boomgaarden's counsel had numerous conversations regarding whether there is equity in
23 the Property and whether the proposed sale of the Property is the best method of liquidating it for
24 the benefit of the estate. On April 3, 2013, the Trustee's counsel explained to
25 Ms. Boomgaarden's counsel that through the Trustee's negotiations with Mr. Dhami, Mr. Dhami
26 had agreed to increase his purchase price for the Property to $205,000, which is $15,000.00
27

MOTION FOR AUTHORIZATION
TO SELL REAL PROPERTY  5

1  more than his First Offer, thereby increasing the benefit to the estate by this amount. (Bakken
2  Decl., ¶ 9).

3      25.    Based on this, on April 3, 2013, Ms. Boomgaarden agreed to reduce the
4  Boomgaarden Lien by $10,000.00, to be credited to the bankruptcy estate as a courtesy to the
5  Trustee for his efforts in pursuing the sale of the Property. The Trustee's counsel expects to file
6  the declaration of Ms. Boomgaarden documenting this agreement by the date of the hearing on
7  this Motion. (Bakken Decl., ¶ 10).

8      26.    The Agreement is conditional on the Bankruptcy Court granting this Motion
9  and the Trustee is amenable to overbidding at the hearing on terms that are agreeable to this
10 Court.

11     27.    The Trustee believes the proposed sales price is a reasonable price for the
12 Property and the sale of the Property is in the best interests of the estate since the estate
13 otherwise would incur additional fees and costs to have its realtor list and market the Property
14 for sale, and it may take a long time for the Property to sell on the market, if at all. Thus, the
15 Trustee respectfully requests that this Court approve the sale pursuant to 11 U.S.C.
16 Section 363(b). (Fukushima Decl., ¶ 12).

17     C.    <u>The Sale Should be Free and Clear of Specified Liens</u>.

18     28.    The Trustee respectfully requests the Court to order that the sale be free
19 and clear of the Tax Liens and the Boomgaarden Lien under 11 U.S.C. Section 363(f)(3).
20 Section 363(f)(3) allows a trustee to sell property free and clear of liens where "the price at
21 which [the Property] is to be sold is greater than the aggregate value of all liens on [the
22 Property]." Here, that is the case.

23     D.    <u>The Sale Should be of the Entire Property</u>.

24     29.    The Trustee also respectfully asks this Court to allow him to sell the interest
25 of Mr. Ramirez, who is a co-owner of the Property, under Section 363(h). Section 363(h)
26 provides:

27

MOTION FOR AUTHORIZATION
TO SELL REAL PROPERTY        6

> Notwithstanding subsection (f) of this section, the trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if—
>
> (1) partition in kind of such property among the estate and such co-owners is impracticable;
>
> (2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;
>
> (3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and
>
> (4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

In the instant case, the Trustee's sale of the entire Property is appropriate pursuant to Section 363(h).

First, partition of the Property is not practicable. Partition would cause both parcels to have even lower marketability than they already have due to a slow market and the recent criminal activity on the Property. In addition, partition is not practicable because of the significant delay and expenses a partition action would require. To partition the Property, the Trustee would have to file a lawsuit for partition under California Code of Civil Procedure Section 872.010, *et seq*. The Trustee would have to file the lawsuit in Yuba County, where the Property is located. C.C.P. § 872.110(b)(1). The lawsuit would proceed just like any lawsuit (C.C.P. § 872.030). The Trustee would have to serve Mr. Ramirez with process (C.C.P. § 872.310(a)), which could be difficult and expensive and take time because he is apparently in Mexico. There is a right to a trial. C.C.P. § 872.610.

Such a lawsuit could easily take months, and is more likely to take years.

A partition action is also not practicable because the estate has no resources to file or litigate it.

MOTION FOR AUTHORIZATION
TO SELL REAL PROPERTY                             7

A partition action is also not practicable because it will result in Mr. Dhami backing out of the sale. Mr. Dhami told the Trustee's counsel that he wants to buy the Property for agricultural purposes, to grow watermelons and pumpkins. He stated that because of the timing of that crop in this location he needs to plant in the first week of May 2013 and, even before he can plant, there is a great deal of clean-up work he must do. He said that if he cannot obtain the Property by the first week of May 2013, then he will revoke his offer to buy the Property. (Bakken Decl., ¶ 11). If Mr. Dhami revokes his offer, then the instant bankruptcy case may well be a no asset case.

Second, a sale of only the estate's undivided interest in the Property would realize significantly less for the estate than the sale of the Property free of Mr. Ramirez's interest. In addition to the slow market and the recent criminal activity, the fact that the estate owns only a fractional interest in the Property makes it even more difficult to sell the Property and also likely would result in a lower sales price on the open market. Here, Mr. Dhami has offered to purchase the entire Property for $205,000, a price that is $4000 more than the price at which the Trustee's realtor valued it.[2]

Third, the benefit to the estate of a sale of the Property free of Mr. Ramirez's interest far outweighs any possible detriment to Mr. Ramirez. As stated above, the Debtor and Mr. Ramirez were actively trying to sell the Property after the Debtor filed this case.

Finally, the Property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power. It will be used to grow watermelons and pumpkins.

30.    Section 363(i) states:

> Before the consummation of a sale of property to which subsection (g) or (h) of this section applies, or of property of the estate that was community property of the debtor and

---

[2] Indeed, even the partition statute recognizes that where a division of the real property would result in a lower value for the parties than a sale of the entire property, the entire real property should be sold and then proceeds divided between the parties. C.C.P. § 872.820(b).

MOTION FOR AUTHORIZATION
TO SELL REAL PROPERTY           8

the debtor's spouse immediately before the commencement of the case, the debtor's spouse, or a co-owner of such property, as the case may be, may purchase such property at the price at which such sale is to be consummated.

Here, the Trustee is not opposed to a requirement that, by no later than the time of the hearing on this motion, Mr. Ramirez be allowed to make a matching offer, or, if there are overbidders, when the highest bid has been made, make a matching bid and purchase the Property at the price at which the sale would be consummated. In such situation, Mr. Ramirez would have to be bound by the terms of the Agreement.

31. Section 363(j) states:

After a sale of property to which subsection (g) or (h) of this section applies, the trustee shall distribute to the debtor's spouse or the co-owners of such property, as the case may be, and to the estate, the proceeds of such sale, less the costs and expenses, not including any compensation of the trustee, of such sale, according to the interests of such spouse or co-owners, and of the estate.

Here, the Trustee would comply with Section 363(j) and distribute to Mr. Ramirez his share or the proceeds of the sale through escrow.

E. Conclusion.

WHEREFORE, the Trustee respectfully requests that the Court authorize the sale of the Property on the terms set forth in this Motion and in the Agreement, and that it grant such other relief as is just and proper.

Dated: April 4, 2013

THE SUNTAG LAW FIRM
A Professional Corporation

By: /s/ Loris L. Bakken
LORIS L. BAKKEN
Attorneys for Chapter 7 Trustee,
ALAN S. FUKUSHIMA

MOTION FOR AUTHORIZATION
TO SELL REAL PROPERTY                    9